No. 82–446. DALLAS COUNTY HOSPITAL DISTRICT *v.* DALLAS ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW ET AL. C. A. 5th Cir. Certiorari denied. JUSTICE BLACKMUN would grant certiorari and give this case plenary consideration. 

JUSTICE REHNQUIST, dissenting.

The Court of Appeals for the Fifth Circuit held in this case that under the First and Fourteenth Amendments a hospital, like city streets and parks, is a "public forum" which must be made available to protestors and demonstrators subject only to reasonable "time, place, and manner" restrictions. 670 F. 2d 629 (1982). I think the Court of Appeals misunderstood the distinction in our cases between public property, such as city streets and parks, which has been historically treated as a "public forum," see *Hague* v. *CIO*, 307 U. S. 496 (1939), and public property, such as jails, military bases, and postal delivery boxes, which has been held not to be a public forum. See *Adderley* v. *Florida*, 385 U. S. 39 (1966); *Greer* v. *Spock*, 424 U. S. 828 (1976); *United States Postal Service* v. *Council of Greenburgh Civic Assns.*, 453 U. S. 114 (1981). The decision of the Court of Appeals, mistakenly I believe, thus requires a hospital to promulgate a set of "regulations" which would provide for access to at least a part of its premises by such protest groups as respondents. To say that the deci-

sion severely limits the ability of public hospitals to devote their premises to the purpose of furnishing medical care to the sick would be an understatement.

The Court of Appeals relied primarily on our decisions in *Shuttlesworth* v. *Birmingham*, 394 U. S. 147 (1969), and *Consolidated Edison Co.* v. *Public Service Comm'n*, 447 U. S. 530 (1980). Neither one of these cases speaks to the issue here. *Shuttlesworth* involved the public streets of Birmingham, Ala. *Consolidated Edison* represented no effort on the part of private individuals to obtain access to public property; as the Court in that case pointed out:

> "Consolidated Edison has not asked to use the offices of the Commission as a forum from which to promulgate its views. Rather, it seeks merely to utilize its own billing envelopes to promulgate its views on controversial issues of public policy." 447 U. S., at 539–540.

We have recently summarized the teachings of this Court's cases as to the kind of government property involved here in *United States Postal Service* v. *Council of Greenburgh Civic Assns., supra:*

> "Indeed, it is difficult to conceive of any reason why this Court should treat a letterbox differently for First Amendment access purposes than it has in the past treated the military base in *Greer* v. *Spock*, 424 U. S. 828 (1976), the jail or prison in *Adderley* v. *Florida*, 385 U. S. 39 (1966), and *Jones* v. *North Carolina Prisoners' Union*, 433 U. S. 119 (1977), or the advertising space made available in city rapid transit cars in *Lehman* v. *City of Shaker Heights*, 418 U. S. 298 (1974). In all these cases, this Court recognized that the First Amendment does not guarantee access to property simply because it is owned or controlled by the government." 453 U. S., at 129.

The Court of Appeals also expressed dissatisfaction with the "regulation" upon which the hospital had relied to exclude

demonstrators, a regulation which simply prohibited demonstrations without prior written approval of the hospital administrator. While such regulations have been held constitutionally defective because of their potential for discriminatory application when public streets and parks are involved, see *Shuttlesworth* v. *Birmingham, supra,* we have never applied this sort of analysis to "regulations" governing access to government property which was not a public forum. Indeed, it is difficult to know why local government authorities charged with the administration of jails, prisons, and hospitals should be under any obligation to promulgate a detailed code of "regulations" governing access to the premises by outsiders. When confronted with an analogous attack on a congressional statute regulating access to postal boxes in *United States Postal Service, supra,* we said:

> "It is thus unnecessary for us to examine § 1725 in the context of a 'time, place, and manner' restriction on the use of the traditional 'public forums' referred to above. . . . But since a letterbox is not traditionally such a 'public forum,' the elaborate analysis engaged in by the District Court was, we think, unnecessary. To be sure, if a governmental regulation is based on the content of the speech or the message, that action must be scrutinized more carefully to ensure that communication has not been prohibited '"merely because public officials disapprove the speaker's view."' *Consolidated Edison Co.* v. *Public Service Comm'n, supra,* at 536, quoting *Niemotko* v. *Maryland,* 340 U. S. 268, 282 (1951) (Frankfurter, J., concurring in result). But in this case there simply is no question that § 1725 does not regulate speech on the basis of content." 453 U. S., at 132.

Here, as in *United States Postal Service,* there is no tenable claim that the hospital regulation was applied other than in a content-neutral manner. The demonstration which respondents actually conducted in Parkland Hospital was clearly sub-

ject to the regulation of the hospital, and equally clearly could have been prohibited by the hospital. In the fall of 1978, approximately 45 members of respondents' organization invaded the hospital premises without permission, and proceeded to hold a press conference in the front lobby of Parkland. This "media event" was covered by, among other representatives of the media, two television stations, each with camera equipment in tow. As would be expected, the demonstration also attracted a crowd of the interested and the curious. The congestion engendered by the "event" blocked the flow of patients and their family members and medical personnel in the lobby itself and from the lobby into various clinics.

The Court of Appeals apparently conceded that this particular demonstration could have been constitutionally prohibited by the hospital, but only under a "valid" set of regulations. Unless we are to accede to the idea that hospitals must henceforth retain house counsel whose job shall be to draft, interpret, and aid in the application of detailed regulations such as those contemplated by the Court of Appeals, I think the writ of certiorari should be granted.